UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL WILLIAMS and G.B., a twelve year old minor, by C.B., her mother,

        Plaintiffs,

    v.                                            6:08-CV-14-DNH-GJD

CITY OF ROME, NEW YORK; CITY OF ROME POLICE DEPARTMENT; JASON PAUL, in his individual and official capacity; JOHN WILLIAMS, in his individual and official capacity; SANDRA GERHARDT, in her individual and official capacity; and KEVIN BEACH, in his individual and official capacity.

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| FELT EVANS LLP<br>Attorneys for Plaintiffs<br>4-6 North Park Row<br>Clinton, New York 13323 | JAY G. WILLIAMS, III, ESQ. |
| CITY OF ROME CORPORATION COUNSEL<br>Attorneys for Defendants<br>198 North Washington Street<br>Rome City Hall<br>Rome, New York 13440 | DIANE M. MARTIN-GRANDE, ESQ. |

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

Plaintiffs Paul Williams and G.B., a twelve year old minor by C.B., her mother, ("G.B.") bring suit against the City of Rome; City of Rome Police Department; Officer Jason Paul; Officer John Williams; Sergeant Sandra Gerhardt; and Deputy Chief of Police Kevin Beach ("defendants"). All police personnel are named as defendants in both their individual and official capacities. Plaintiffs assert causes of action pursuant to 42 U.S.C. § 1983, including claims for false arrest, excessive force, and municipal liability, as well as claims arising under New York State law for assault, battery, negligence, and intentional and/or negligent infliction of emotional distress.

Plaintiff Williams ("plaintiff") moves for summary judgment of his federal law claims pursuant to Federal Rule of Civil Procedure 56. Defendants oppose and cross-move for summary judgment dismissing all of his claims. The parties have not moved with respect to G.B.'s claims. Oral argument was heard on May 15, 2009 in Utica, New York. Decision was reserved.

**II. BACKGROUND**

Plaintiff was employed at the Salvation Army Store (the "store") on Erie Boulevard in Rome, New York. On Sunday, January 7, 2007, he traveled to the store with four pre-teenage girls, including his daughter, his two stepdaughters (T.B. and plaintiff G.B.), and their friend. A driver traveling past the store placed a 911 telephone call reporting a possible burglary of the store after he observed plaintiff and one of the young girls carrying items from the store's entrance to an adjacent van.

Defendant Officer Paul was dispatched to the store and informed of a possible burglary in progress involving two unknown suspects and a gray van parked near the building.  Upon arriving to the scene, he observed plaintiff's gray van parked on the east side of the building.  He also observed that none of the store's lights were turned on and one of its doors was open.  Plaintiff soon emerged from the open door at which point Officer Paul drew his weapon and ordered plaintiff to raise his hands in the air. Plaintiff was wearing baggy jeans, a baggy coat, a baggy shirt, and a backwards baseball cap.  None of the clothes he was wearing were part of the Salvation Army's employee uniform.

The ensuing sequence and duration of events is partially contested by the parties, and all disputed facts should be viewed in the light most favorable to the non-moving party when considering each party's respective motion for summary judgment.  Nevertheless, both parties agree that plaintiff complied with Officer Paul's requests to place his hands on the outside wall of the store.  Officer Paul then handcuffed plaintiff and patted him down for weapons prior to asking him to explain his presence at the store.  No weapons were found, and plaintiff explained that he was a store employee doing part of his job to help sort the store's inventory.  The young girls accompanying plaintiff soon emerged from the store at which point Officer Paul pointed his weapon towards them and ordered them to stand near the wall.

Defendant Officer Williams was the next officer to arrive at the scene.  Upon his arrival, he observed plaintiff in handcuffs alongside the four pre-teenage girls standing outside the store.  Defendant Sergeant Gerhardt arrived shortly thereafter and entered the store with Officer Williams in order to determine if there were additional occupants inside.  There was no sign of forced entry into the store, no alarm had sounded, and plaintiff was

able to produce keys to the store which fit the lock for the store's entrance upon testing performed by Officer Williams. The young girls identified plaintiff as their father or friend's father and corroborated his story that they were helping him sort clothing as part of his job. Although not handcuffed, the girls were not permitted to leave the scene.

Plaintiff remained handcuffed until the store's manager, Bettina Carman, arrived at the scene to identify him as a store employee. Defendants provide several estimates of plaintiff's detention ranging from fifteen to thirty minutes, whereas plaintiff estimates he and the young girls were detained for approximately forty-five minutes.

## III. DISCUSSION

### A. Motion for Summary Judgment

Summary judgment is warranted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits reveal no genuine issue as to any material fact. FED. R. CIV. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). All facts, inferences, and ambiguities must be viewed in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Mandell, 316 F.3d at 377. Initially, the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2458 (1986). After the moving party has satisfied its burden, the non-moving party must assert specific facts demonstrating there is a genuine issue to be decided at trial. FED. R. CIV. P. 56; Liberty Lobby, Inc., 450 U.S. at 250, 106 S. Ct. at 2511. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. There must be sufficient evidence upon which a reasonable fact

finder could return a verdict for the non-moving party. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### 1. False Arrest – Officer Paul

Under New York law, a plaintiff asserting a false arrest claim must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). Defendant concedes that the only issue is whether plaintiff's confinement was privileged, i.e., whether there was probable cause to suspect he had committed a crime. (Def's. Mem. of Law in Supp. of Cross-Mot. for Summ. J., Dkt. No. 39, 2.) In order to have probable cause to detain a suspect, the arresting officer must have had "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

Rather than contest what Officer Paul knew at the time he handcuffed plaintiff, the parties dispute only whether his knowledge at that moment rose to the level of probable cause. "It has long been recognized that, where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007) (citing Stewart v. Sonneborn, 98 U.S. 187, 194 (1878)). In light of the lack of disputed facts related to the issue of probable cause, it necessarily follows that one of the parties' motions for summary judgment with respect to the false arrest claim must be granted.

Officer Paul was apprised of the following information before handcuffing plaintiff: (1) there was a possible burglary at the store involving unknown suspects and a gray van (Ex. C to Pl's. Mot. for Summ. J., Dkt. No. 37-7, 15:4-8[1]); (2) a gray van was parked near the side of the store (id. at 17:8-16); (3) the lights inside the store were turned off in the middle of the day (id. at 18:19-23); (4) a man had exited the store without an employee identification badge or uniform (id. at 23:1-3); and (5) the man was not carrying anything from the store. (id., Dkt. No. 37-8, at 27:20-22).  These facts are either uncontroverted by the parties or viewed in the light most favorable to defendants. Compare Def's. Mem. of Law in Supp. of Cross-Mot. for Summ. J., Dkt. No. 39, 3 (listing facts known to Officer Paul before he handcuffed plaintiff), with Pl's. Reply Mem. of Law, Dkt. No. 43, 3 (listing facts known to Officer Paul before he handcuffed plaintiff).  The fact that plaintiff was unable to produce an identification badge after being questioned by Officer Paul is irrelevant for purposes of determining whether there was probable cause to believe plaintiff was committing a crime because the questioning did not occur until after plaintiff was placed in handcuffs. See Martinez v. Simonetti, 202 F.3d 625, 635 (2d Cir. 2000) ("In evaluating the probable cause determination, we consider the facts available to the officer at the time of the arrest.") (internal quotations omitted) (citations omitted); see also Warren v. Dwyer, 906 F.2d 70, 73 (2d Cir. 1990) ("For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure.") (citing Brinegar v. United States, 338 U.S. 160, 170-78, 69 S. Ct. 1302, 1308-12 (1949)).

---

[1] Exhibit C to plaintiff's motion for summary judgment (Officer Paul's deposition) was filed as two separate documents.  The document begins under docket number 37-7 and continues under docket number 37-8.

Even assuming *arguendo* that there was enough information for Officer Paul to have reasonable suspicion that plaintiff may have been committing a crime, thereby permitting Officer Paul to stop plaintiff and ask him questions pursuant to Terry v. Ohio, 392 U.S. 1 (1968), the information available to him did not rise to the level of probable cause to arrest, seize, and handcuff plaintiff.  Significantly, he elected to handcuff plaintiff prior to questioning him about his presence at the store.  Additionally, he admitted that there was nothing which led him to believe that store employees were required to wear a uniform. (Ex. C to Pl's. Mot. for Summ. J., Dkt. No. 37-7, at 24:15-18).  He also stated that he was unaware of the store's weekend hours or whether the store was open on Sundays. (Id., Dkt. No., 37-8, at 25:5-10).  Even if Officer Paul reasonably assumed the store was closed because plaintiff's van was the only vehicle parked nearby, he still observed nothing more than an unidentified, empty-handed man emerge from a closed store in the middle of the day.  The fact that police dispatch informed him that there was a possible burglary at the store did not give him *carte blanche* to handcuff anyone found at the scene, particularly without first questioning the suspect or at least observing him do something unusual, i.e., ignore his commands, retreat quickly into the store, etc., or in possession of stolen property.

Again, this was not a situation where a suspect was observed acting in a hurried manner or fleeing at the sight of law enforcement. See, e.g., Illinois v. Wardlow, 528 U.S. 119, 124-25, 120 S. Ct. 673, 676 (2000).  Under such circumstances, the facts known to a police officer may very likely surpass reasonable suspicion and qualify within the more stringent standard for probable cause. See, e.g., United States v. Baldwin, 496 F.3d 215, 220 (2d Cir. 2007) (holding probable cause existed after suspect did not comply with orders to show his hands and thereafter fled from police).  However, in contrast to such a situation,

plaintiff was walking as he exited the store (Ex. C to Pl's. Mot. for Summ. J., Dkt. No. 37-8, at 27:23-24), was not carrying anything in his hands (id. at 27:20-22), stopped immediately when Officer Paul exited his police car (id. at 28:2-4), and fully complied with orders to stand facing the store's wall. (Id. at 30:6-9).  Therefore, the information available to Officer Paul at the time he handcuffed plaintiff would not lead a person of reasonable caution to believe a crime had been or was being committed by plaintiff.  Accordingly, plaintiff Paul Williams's motion for summary judgment of his § 1983 false arrest claim against Officer Paul will be granted.

### 2. Use of Force – Officer Paul

Whether police officers' use of force is excessive requires an analysis of the conduct under the Fourth Amendment's reasonableness standard. Lennon v. Miller, 66 F. 3d 416, 425 (2d Cir. 1995) (citing Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989)).  Under the Fourth Amendment, courts must afford "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S. Ct. at 1872.

Plaintiff's excessive force claim arises from being forcibly detained with handcuffs and Officer Paul's brandishing of a firearm.  Plaintiff contends that summary judgment is warranted because defendants' behavior was unreasonable under the Fourth Amendment as a matter of law.  In support of his motion, plaintiff cites People v. Jiminez, 187 A.D.2d 332, 589 N.Y.S.2d 478 (N.Y. App. Div. 2d Dep't 1992) for the proposition that a police officer "must have a reasonably founded suspicion that criminal activity was under way" before

detaining or handcuffing an individual. (See Pl's. Mem. of Law in Supp. of Mot. for Summ. J., Dkt. No. 37-13, 5).

Putting aside the fact that Jiminez considered whether evidence in a criminal case should be suppressed rather than whether a police officer's use of force was excessive for purposes of civil liability, that case is distinguishable on other grounds because it found that there was "no suggestion of any criminal activity," Jiminez, 187 A.D.2d at 334, 589 N.Y.S.2d at 480, whereas Officer Paul had received a report of a possible burglary in progress at the store. Additionally, the criminal defendant in Jiminez was located in an elevator and did nothing more than move his arms and elbows from his sides before being detained, id.; meanwhile, plaintiff was observed exiting from a relatively large store and proceeding towards a nearby van.

Viewed in the light most favorable to the defendants, Officer Paul was unaware of who else was inside the store and the threat they posed to his safety when he drew his weapon and detained plaintiff. Further, his weapon was reholstered soon after he determined none of the other suspects were armed. Despite plaintiff's undisputed compliance with Officer Paul's orders, the nature of the suspected crime, the initial uncertain risk to Officer Paul's safety, and most significantly, the disputed duration for which Officer Paul brandished his weapon and detained plaintiff in handcuffs all create issues of fact related to whether the use of force was unreasonable under the Fourth Amendment. Accordingly, plaintiff's motion for summary judgment of his excessive force claim will be denied.

By the same token, defendants' cross-motion for summary judgment of the excessive force claim must also be denied because there is an evidentiary basis for a rational jury to find for the plaintiff. A jury could conclude that Officer Paul's use of force,

- 9 -

particularly his pointing his weapon at plaintiff and his use of handcuffs to detain him, was unreasonable given plaintiff's eventual explanation of why he was at the store, his possession of keys to the building, and his level of cooperation with the officer's commands. Moreover, defendants' argument that it was necessary to detain plaintiff in handcuffs even after Officer Paul observed the other suspects exit the store is contravened by the fact that those suspects were four pre-teenage girls, none of which were carrying weapons. Therefore, defendant's cross-motion for summary judgment of plaintiff's excessive force claim will be denied.

### 3. **Claims Against Deputy Chief Beach, Officer Williams, and Sergeant Gerhardt**

Plaintiff's claims against the remaining individual defendants arise from their alleged failure to intervene in Officer Paul's conduct.  As a principal matter, defendant Deputy Chief Beach was not present on the day in question and is not alleged to have had any personal involvement in the deprivation of plaintiff's rights.  Additionally, plaintiff's complaint does not state a claim against Deputy Chief Beach specifically, and despite his position, there are no allegations that he helped promote an unconstitutional practice or policy within the Rome Police Department.  Therefore, all claims against Deputy Chief Beach will be dismissed and he will be terminated as a defendant.

The evidence presented thus far is similarly insufficient to sustain the claims against defendants Officer Williams and Sergeant Gerhardt for their alleged failure to intervene in the deprivation of plaintiff's rights.  In particular, plaintiff does not direct attention to an evidentiary basis for the fact finder to infer that either Officer Williams or Sergeant Gerhardt had "a realistic opportunity to intervene to prevent the harm from occurring."

Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).  Even viewed in the light most favorable to plaintiff, the arriving officers arrived late at the scene and focused upon learning who else may have been present within the store.  Further, plaintiff offers no argument for how the arriving officers had a meaningful opportunity to intervene in Officer Paul's conduct.  Therefore, all claims against Sergeant Gerhardt and Officer Williams will also be dismissed and they will be terminated as defendants.[2]

### 4. Municipal Liability – City of Rome[3]

A plaintiff must prove three elements to prevail on a claim brought against a municipality pursuant to § 1983: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195, (2d Cir. 2007) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).  Although proof of a written regulation or department rule is not required, a plaintiff must identify more than a single incident of unconstitutional conduct, particularly if the municipal official is not in a policy-making position. Decarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (citations omitted).  A plaintiff may prevail if the evidence shows that the unconstitutional practice is so "persistent or widespread as to constitute a custom or usage with the force of law." Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotations omitted).

---

[2] There is no evidence that any of these officers arrested, used any force, assaulted, or were negligent towards the plaintiff or G.B.  Therefore, G.B.'s claims against them must also be dismissed *sua sponte*.

[3] Since the police department is not a separate entity from the City of Rome, the caption of the case will hereafter include only the "City of Rome" with respect to the municipal defendant.

Defendants argue that plaintiff has failed to present evidence of an official policy or custom. However, defendants' deposition testimony raises an issue of fact for whether the Rome Police Department has a practice of handcuffing suspects before asking investigative questions about the suspects' purpose for being in the area. On one hand, Officer Paul stated clearly that it was neither the Police Department's nor his own personal policy to handcuff a suspect before asking them to identify themselves and to explain their purpose. (Ex. C to Pl's. Mot. for Summ. J., Dkt. No. 37-8, 35:9-13). On the other hand, Officer Paul's co-defendants made statements indicating that such a policy exists: Officer Williams stated it is Rome Police Department protocol to handcuff a suspect before asking who they are and what their purpose is so long as the officer received a crime in progress call from the police dispatch (Ex. D to Pl's. Mot. for Summ. J., Dkt. No. 37-9, 20:17-23); Sergeant Gerhardt stated that it would be "generally" consistent with Rome Police Department protocol to handcuff a suspect emerging from an office building on a weekend and force him to wait until someone could arrive to make an in-person identification if the officer had received a possible burglary call from police dispatch (Ex. E to Pl's. Mot. for Summ. J., Dkt. No. 37-11, 43:12-25, 44:1-5); and Deputy Chief Beach testified that it was Rome Police Department policy to draw one's weapon when arriving at a possible burglary scene, but that whether an officer should handcuff the suspect prior to asking him to state his purpose "would depend on the situation." (Ex. F to Pl's. Mot. for Summ. J., Dkt No. 37-12, 8:12-25, 9:1-14).

In light of the defendants' proffered testimony, there is an issue of fact for the jury to decide whether Officer Paul's unconstitutional action in arresting, seizing, and handcuffing plaintiff were so widespread throughout the Rome Police Department as to constitute a custom or policy with the force of law. Although Officer Paul denies the existence of such a

policy, his co-defendants state otherwise.  Therefore, both parties' motions for summary judgment with respect to the municipal liability claim under § 1983 will be denied and that issue will be presented to the jury at trial.

### 5. Qualified Immunity – Officer Paul[4]

Even if there are issues of fact related to whether plaintiff's constitutional rights were violated, Officer Paul contends that he is entitled to the defense of qualified immunity on the grounds that reasonable officers could disagree as to whether there was probable cause to suspect plaintiff was committing a crime and if it was reasonable for him to brandish his weapon and arrest, seize, and handcuff plaintiff for an extended period of time.  Whether defendant is entitled to qualified immunity entails two considerations. Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2006).  The first issue is whether the facts viewed in the light most favorable to plaintiff indicate the violation of one of his constitutional rights. Id. (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001), overruled on other grounds by, Pearson v. Callahan, 129 S. Ct. 808, 813 (2009)).  The second consideration is whether the defendant's actions violated a clearly established constitutional right of which reasonable officials would have known. Jones, 465 F.3d at 55 (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515 (2002)).

In accordance with the determination that Officer Paul lacked probable cause as a matter of law to suspect plaintiff was committing a crime, he is clearly not entitled to qualified immunity with respect to the claim for false arrest.  As previously stated, the facts of which Officer Paul was aware at the time he handcuffed plaintiff are uncontroverted, and it was

---

[4] Since the complaint will be dismissed against defendants Beach, Williams, and Gerhardt, the issue of qualified immunity regarding them need not be considered.

objectively unreasonable for him to believe plaintiff had committed a crime after merely observing him exit from the store on a Sunday afternoon.  Irrespective of plaintiff's lack of an employee uniform, his calm and complete compliance with Officer Paul's orders and the failure to ask him questions before handcuffing him establish a lack of probable cause as a matter of law.

In contrast, because there is a controverted issue of fact related to pointing his weapon at plaintiff and how long plaintiff was actually handcuffed and detained, whether Officer Paul is entitled to qualified immunity for his use of force likewise depends on a disputed issue of fact.  Therefore, his motion for qualified immunity as a matter of law as to the excessive force claim must be denied, and the jury will consider this issue at trial.

### 6.  State Law Claims

Defendants move for summary judgment of plaintiff's state law claims solely for the same reasons put forth for the dismissal of plaintiff's federal law claims.  In light of the decisions with respect to those claims, defendants' motion to dismiss plaintiff's state law claims against Officer Paul and the City of Rome will be denied.

## IV. CONCLUSION

Summary judgment in favor of plaintiff Paul Williams with respect to his claim against Officer Paul for false arrest is warranted in large part because Officer Paul handcuffed plaintiff prior to asking him to identify himself and state his purpose for being at the store. Even if Officer Paul was aware of sufficient facts to permit a Terry stop and inquiry of plaintiff, he needed more information suggesting a crime had been or was being committed to execute a seizure of plaintiff's person.

Summary judgment in favor of defendants Deputy Chief Beach, Officer Williams, and Sergeant Gerhardt is warranted because there is no evidence that these officers committed any affirmative acts and there is insufficient evidence for the jury to conclude that they failed to intervene in the deprivation of plaintiff's rights.  Without even an argument as to how they could have prevented Officer Paul from seizing plaintiff's person and drawing his weapon, all claims against the arriving officers must be dismissed.

Summary judgment of plaintiff's remaining claims is not warranted because there are genuine issues of material fact related to the § 1983 claim for excessive force and municipal liability.  Specifically, the parties dispute the duration for which plaintiff was detained in handcuffs and the officers make conflicting statements about the existence of a Rome Police Department policy to handcuff burglary suspects before asking them about their identification and purpose.  The remaining defendants have failed to set forth any additional arguments with regard to the state law claims.

Therefore, it is

ORDERED that

(1) Plaintiff's motion for summary judgment is GRANTED with respect to the § 1983 false arrest claim against defendant Jason Paul;

(2) Plaintiff's motion for summary judgment is otherwise DENIED;

(3) Defendants' motion for summary judgment is GRANTED with respect to defendants Kevin Beach, John Williams, and Sandra Gerhardt, and the complaint is DISMISSED in its entirety against said defendants; and

(4) Defendants' motion for summary judgment is otherwise DENIED.

_____
United States District Judge

Dated: July 15, 2009
       Utica, New York.

To clarify, the following issues remain to be resolved at trial: (1) the damages for plaintiff Paul Williams's § 1983 false arrest claim against defendant Officer Jason Paul; (2) the liability and damages, if any, for plaintiff Paul Williams's § 1983 excessive force claim and state law claims against defendant Officer Jason Paul; (3) the liability and damages, if any, for plaintiff G.B., a twelve year old minor by C.B., her mother, for § 1983 and state law claims against defendant Officer Jason Paul; and (4) the liability and damages, if any, for both plaintiffs' § 1983 claims and state law claims against the defendant City of Rome.